WILLIAM MINOT et al., Appellants, v. PELLETIER COMPANY, Appellee.

JANUARY 23, 1929.

*Shull, Stilwill, Shull & Wadden,* for appellants.

*Ralph A. Oliver* and *Jepson, Struble, Anderson & Sifford,* for appellee.

KINDIG, J.—Appellants are nonresidents of Iowa, and have their principal place of business in Boston, Massachusetts. They, in the execution of a common-law trust, hold title to certain real  estate in Sioux City, upon which is a store building. That property is occupied by the Pelletier Company, defendant and appellee, for department store purposes, under a lease executed by it and appellants on the 15th day of January, 1916. Such rental undertaking contemplated and covered a period of 20 years from that date. Annual rent on the real estate, exclusive of the building, was fixed according to the value thereof, plus interest on certain assessments; while that on the store structure was arbitrarily placed at $10,000 each year for the entire lease term. This valuation, according to the lease, was determined by five-year cycles. At the beginning, the annual rental was arbi-

trarily set by the parties at $25,720 for the period commencing January 15, 1916, and ending January 15, 1921, which sum was allocated as follows: $10,000 for the buildings, and $15,720 for the real estate, arrived at by figuring 6 per cent on $262,000, the estimated value of the ground. A minimum yearly rental during the entire leasehold was placed at $25,720, regardless of the five-year periods named in the contract. In other words, the five-year interims related to both reduction and increase, but in no event could the decrease leave the annual rental less than the minimum sum of $25,720.

As the first five-year "rental period" above named approached its termination, appellants sought to raise the annual rental, but appellee refused. So, in accordance with the stipulations of the lease, appellants asked for a revaluation of the realty for the five-year interval beginning January 15, 1921, and ending January 15, 1926. Accordingly, appraisers were appointed by the parties, and an estimation made by those valuers, who fixed the worth of the real estate at the sum of $262,000, exclusive of buildings, for the five-year span beginning January 15, 1921. Thus, the appellee continued to pay annual rental on this basis during that time.

Again, sometime before January 15, 1926, appellants endeavored to obtain more rental for the next five years. Once more, this request was refused by appellee. Hence, the necessary steps were taken for the designation of appraisers or valuers by both parties. William Minot was selected by appellants, while F. M. Pelletier was appointed by appellee. These men could not agree upon the third. Resultantly, appellants filed their petition in the district court, praying that the third arbitrator or valuer be chosen, within the purview of the authorizations contained in the lease.

By way of answer and cross-petition, appellee suggested that appellants refused to permit an appraisement or revaluation according to the terms of the lease. It is the theory of appellee that appellants are not entitled to additional rentals for the new period unless there "has been an increase in the value of the real estate, exclusive of buildings, since the appraisement had and made as of January 15, 1921, and as fixed and determined by the finding, report, and award of the valuers made on February 2, 1921." To put the thought in another way, appellee

argues that the appraisement fixed for a given cycle is, for the purposes of the lease, the absolute value of the real estate at that time, and when making a new revaluation in the future, the appraisers or valuers cannot ignore the former estimation thus fixed and determined. For elucidation, it is suggested that the future valuers cannot say that former appraisers were mistaken in their judgment, but, at the outset, the new estimators must proceed on the premise that the old basis of value is conclusive up to the time it was made.

Reply was then interposed by appellants to appellee's cross-petition, embodying, among other matters: First, a general denial; second, a statement that the method of revaluation claimed by appellee is immaterial, irrelevant, and not authorized by the lease, because, they assert, the new valuers are in no way handicapped or incumbered by what was done by the old, who preceded them, and that an entirely new estimate can be arrived at, regardless of previous appraisements; and third, a plea that the rental agreement has no provision to the effect that the district court has a right to construe the document.

Whereupon, the district court found for the appellee, adopted its view concerning the valuation, and ordered the new appraisement accordingly.

I. Material portions of the lease contract are:

"XVI. Yearly Rent. Provided also, and it is hereby agreed as follows: The yearly rent payable for said premises for the first five (5) years of said term, ending January 15, 1921, shall be twenty-five thousand seven hundred and twenty dollars ($25,720).

"XVII. Revaluation. The rental to be paid during the balance of the term of this lease shall be subject to revision, based upon any increase in the estimated value of the land, plus any betterments assessed thereon, as follows: The lessors may, if they so elect, ask for a readjustment of the rent to take effect at the expiration of said five (5) year period, but if they elect to do so they shall give notice in writing to the lessee at least three (3) months prior to the end of said period. In case the parties agree in writing upon an increased yearly rent for said premises for the second five (5) years of said term, exceeding twenty-five thousand seven hundred and twenty dollars ($25,720) plus six per cent (6%) on any betterments assessed

on the land, then such increased rent shall be the yearly rent payable for the said five (5) years beginning January 15, 1921.

"In the absence of any such agreement for increased rent either party may give notice in writing to the other party of the desire of such party to have the value of the land estimated by valuers, and in that case the value of the land as of January 15, 1921, shall be estimated by valuers, one to be named by the party giving such notice and another to be named by the other party, and the third to be named by the two so named. But if such other party does not name a valuer and notify the same to the party giving such notice within twenty (20) days after being requested by such party to do so, then such last-mentioned party shall name a second valuer and the two so appointed shall name the third valuer. In case they are unable to agree within thirty (30) days, the third valuer shall be appointed by the district court of Woodbury County, Iowa; and if any valuer appointed by either of the said parties shall die, or refuse, or become incapable to act, the party that appointed him shall appoint another valuer in his place, and if such party shall not name another valuer and notify the same to the other party within twenty (20) days after being requested by such other party so to do, then such other party shall name another valuer, and if the third valuer shall die, or refuse or become incapable to act, the two other valuers shall not be considered an arbitration, and they shall be at liberty to act on their own judgment without hearing evidence.

"The decision of a majority of the valuers shall be final and binding on the parties. The yearly rent payable during said term of five (5) years beginning January 15, 1921, shall be six per cent (6%) on the value of the land, exclusive of the buildings as determined by such valuers, plus ten thousand dollars ($10,000), provided, however, that such rent shall not in any case be less than twenty-five thousand seven hundred and twenty dollars ($25,720) plus six per cent (6%) on any betterments assessed on the land. * * *

"The lessors may, if they so elect, ask for readjustments of the rent to take effect at the expiration of the second five-year period on January 15, 1926, or of the third five-year period on January 15, 1931, or of both periods, and the lessee may ask for readjustments of rent to take effect at the expiration of said

periods in case the rent then payable exceeds twenty-five thousand seven hundred and twenty dollars ($25,720) plus six per cent (6%) on any betterments assessed on the land. In each case the party asking for a readjustment of rent shall give notice in writing to the other party at least three (3) months before the beginning of the five (5) year period in question, and in such case the parties may agree in writing upon the rent, and in case they fail to do so either party may ask for a valuation of the land, and all provisions relative to such valuation shall apply as hereinbefore stated.

"It is understood and agreed that in case no readjustment of rent is asked for to take effect at the end of any five-year period the rent shall continue during such period at the rate previously in force, and that in case of any valuation the yearly rent shall be six per cent (6%) of the valuation of the land as determined by the valuers, plus ten thousand dollars ($10,000) provided, however, that it shall not in any case be less than twenty-five thousand seven hundred and twenty dollars ($25,720) plus six per cent (6%) on any betterments assessed on the land."

Manifestly, a study of the lease agreement will convince that the old estimate is controlling in the determination of the new. The future revaluation must be made on the basis that the old was correct. No unbridled license is given the new appraisers to disregard the estimates of the old, declare them wrong, and make findings inconsistent therewith. Authority conferred upon these future valuers is to determine whether or not there has been an increase in the worth of the real estate over and above its value as fixed by the parties themselves, or the former appraisers, assuming, when so doing, that the previous valuation was right for the period to which it applied.

Beyond a peradventure of a doubt, the appellants and the appellee desired a safeguard for the amount of rentals to be received on the one hand and paid on the other. Illustration of this thought is readily found in the fact that a minimum annual rental was, at the outset, determined to be $25,720, arrived at by allowing $10,000 for the buildings and 6 per cent on $262,000, the agreed value of the real estate. Thereby both appellants and appellee were protected. First, appellants were assured that the annual rental for the property would never be below $25,720;

and second, appellee was guaranteed that the valuation of the real estate, for the purposes of the lease, was arbitrarily agreed by both parties to be $262,000 at the inception of the venture. Appellee was not content with that. It desired further regulation of such valuation in the future, and to accomplish this, there was placed in the rental agreement the following provision, above quoted:

"The rental to be paid during the balance of the term of this lease shall be subject to revision, based upon any increase in the *estimated value* [the italics are ours] of the land * * * ."

Significance is to be given the use there of the words "estimated value." Obviously, the parties did not wish the interpretation to be as if there had been used but the one word, "value." "Estimated value," as embraced in the lease before mentioned, must refer, in the case at bar, to the valuation made by these parties January 15, 1921. Everything following in Section 17 of the lease, supra, is modified and controlled by the words in the first paragraph thereof, to wit: "based upon any increase in the estimated value of the land." "Increase" relates to the formerly established estimated value. There is no other existing estimated value to which it could apply.

Consequently, the lessor and lessee intended to and did say, in effect, that the revision within the meaning of Section 17 of the lease was to be based upon any increase in the value of the land over the previous estimate. Their purpose must have been this; because the phrase "based upon any increase in the estimated value of the land" immediately follows Division 16 of the lease, wherein the first estimate was fixed. If, at the end of any five-year period, a new estimate was made, future revisions would necessarily be based upon that estimate. "Revision," as therein used, relates to the rental, rather than to "the estimated, value."

Therefore, the duty confronting the new appraisers is not to say that, at the present time, the real estate, upon independent consideration, is worth more than $262,000, but, on the other hand, it is their task to determine whether the value of the real estate has increased or decreased during the 5-year period. When so doing, it is not for the valuers to find that such property was worth more or less than said sum of $262,000, agreed upon at the

inception of the lease. Rather than doing that, it is their duty to ascertain whether or not the said property has increased or decreased in value during the last 5 years. If they so find, then they must fix the amount of such increase or decrease, and that item, added to or taken from the original $262,000, shall constitute and be the new basis for figuring the rent during the succeeding period. Proper interpretation of the contract was accordingly made by the district court.

II. Assuming the above and foregoing to be true, appellants urge, nevertheless, that there must be a reversal because the trial court had no authority to consider appellee's cross bill. Objections material at this juncture must be confined to appellants' reply thereto.

Three phases were embodied in the appellants' reply to the cross bill, namely: First, a general denial; second, that appellee's theory of revaluation was not correct; and third, that there was no provision in the lease authorizing the court to interpret the same. No objection was made that the cross bill was not properly filed, within the purview of Section 11155 of the 1924 Code. Nor was complaint at that time made that there was lacking statutory or other authorization for appellee's pleading, except that it was not allowed by the express stipulations of the lease. Moreover, appellants, by reply, joined issues with the cross bill, went to trial thereon, permitted the theory of the trial to be formulated accordingly, and thus allowed the trial court to make adjudication. This they did without resisting the filing of the cross bill, or moving to strike or dismiss the same, either as an equitable demurrer or otherwise.

Clearly, any complaint which appellants might otherwise have had was thereby waived.

III. Reliance in the premises need not be made by appellee upon the terms of the lease, to give the court jurisdiction, as inferred by Proposition III of appellants' reply. Authority for the court to hear the matters thus raised can be predicated, not on the lease alone, but upon the statutes, general law, and the equities relating thereto. Thus it was done, and appellants permitted the trial to proceed thereafter without objection.

IV. While the express objection was not made below that the trial court did not have jurisdiction of the subject-matter

named·in the cross bill, yet suggestion is now interposed that the same was lacking. Express exception is not made that general equitable jurisdiction does not exist, nor is it said that the result of the litigation will be merely declaratory; but rather, the thought is that there was no jurisdiction in the trial court to do anything but appoint the third appraiser. Whatever might have been the result, had that question been timely and properly raised, we need not here speculate, for the reason that a reply was interposed to the cross bill, as before related, and issues joined thereon.

Proceeding in that manner and way, appellants waived their right to make the particular protest now insisted upon.

V. Jurisdiction was not lacking in the trial court because the cross bill contained subject-matter and a prayer which would be declaratory only. Material at this point is a paragraph in the cross bill as follows:

"The parties to said lease have been unable to agree as to the meaning and construction of certain provisions of said lease, and the manner and form of the appraisement to be made herein under said lease."

Subsequent to this and other allegations is the prayer asking that the appraisement or revaluation be made according to the terms of the lease, which appellee contends is in harmony with its theory. More, therefore, was desired and demanded than a mere construction of the instrument. The redress sought was analogous to and in the nature of a specific performance of the contract. That being true, there is more involved than a mere construction, amounting to a judicial declaration. Equity has jurisdiction to grant the specific performance of lease contracts, under proper facts and circumstances. 36 Corpus Juris 680.

Error on the part of the trial court does not appear here.

VI. Grievance is founded upon the thought that the trial court set off the third appraiser from the others, and required him to follow the court's direction, rather than his independent judgment in conjunction with the other two valuers.

Ground for this suggestion is apparently wanting. A quotation from the court's decree on this point will suffice:

"It is therefore ordered, adjudged, and decreed that J. W.

Gray, of Sioux City, Woodbury County, Iowa, be and he is hereby appointed a valuer to act, under the provisions of the lease herein and this decree, with the two valuers heretofore selected by the parties to said lease.''

It is not necessary to do more than state the court's own words, to show that the third valuer, Gray, was to act in conjunction and harmony with the other two. Instructions to the third valuer were no more than that he, together with the others, should proceed upon the theory of revaluation found by the court embodied in the contract.

VII. Nevertheless, appellants urge that the other two valuers were not bound, because they were not made parties to the action. That is quite immaterial. Appellants themselves are in court, and fully concluded by the adjudication. They, rather than the appraisers, refused to proceed according to the contract. As now constituted, the contract must be read in the light of the court's judgment and decree. This the three appraisers will have, and there is no reason to anticipate that they will not perform their duties accordingly.

VIII. Apparently the court retained jurisdiction for the purpose of further controlling the appraisement. Protest by appellants is made because thereof.

What purpose the trial court had in mind in doing this is not clear, but it seems that it desired the third valuer appointed to report his doings in the premises. Perhaps it was the thought of the court that J. W. Gray, named as the third valuer, might not accept, or would refuse to qualify, or act, and that further jurisdiction might be exercised in the premises. Up to date, at least, appellants have not been harmed, and until they are in some way prejudiced, we see no basis for interference.

After a careful reading of the entire record and a full consideration of the briefs and arguments, we are convinced that the judgment and decree of the district court should be, and it is hereby, affirmed.—*Affirmed.*

ALBERT, C. J., and STEVENS, FAVILLE, DE GRAFF, and MORLING, JJ., concur.

EVANS and WAGNER, JJ., dissent.